IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES V. DEAN, et al().

v.    :    Civil No. CCB-10-297

THOMAS BECKLEY, et al.

## MEMORANDUM

James V. Dean and Marla D. Dean have sued Thomas Beckley ("Mr. Beckley") and Thom Beckley, Inc., alleging fraud in the inducement, breach of contract, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, and violation of the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et. seq.* Now pending is the defendants' motion to dismiss all counts for failure to state a claim. For the reasons stated below, the motion will be granted in part and denied in part.

## BACKGROUND

On February 6, 2009, Mr. Dean visited Endless Summer RV, owned by Thom Beckley, Inc., with the purpose of purchasing a new RV. Paul Chamberlain, a sales person at Endless Summer, showed Mr. Dean a 2008 Holiday Rambler Bali Imperial Motor Coach. Mr. Chamberlain quoted Mr. Dean a purchase price, which Mr. Dean rejected. The next day, Mr. Chamberlain called Mr. Dean with an offer to sell him a 2009 Holiday Rambler RV. On February 9, 2009, Mr. Dean and his wife went to Endless Summer to meet with Mr. Chamberlain, at which point the Deans entered into a sales contract with Endless Summer to purchase the 2009 Holiday Rambler for $329,600. The Deans made a down payment of $50,000

1

on February 9.

On March 5, 2009, prior to the closing date for the sale of the RV, the manufacturer of the Deans' new RV filed for bankruptcy. On March 13, 2009, the Deans returned to Endless Summer to conduct a walkthrough of the RV with Mr. Chamberlain and Mr. Beckley. During the course of the walkthrough, Mr. Beckley explained the nature and extent of coverage that Holiday Rambler provided for the RV through its limited warranty. At no point did any employee of Endless Summer notify the Deans that Holiday Rambler had filed for bankruptcy a week earlier. Although the RV was not ready for delivery, the Deans proceeded with the closing on March 13 and tendered a check for $14,000 to Endless Summer. The Deans also purchased a seven-year extended warranty on the RV for $7,758 through Endless Summer employee Bob Woodcock.

On March 20, 2009, the RV was delivered to the Deans. The Deans began using the RV and quickly discovered numerous problems allegedly covered by warranty that required maintenance or replacement. The Deans learned from a third party, however, that Holiday Rambler had filed for bankruptcy and that the manufacturer's warranty was likely worthless. On April 1, 2009, Mr. Dean contacted Mr. Beckley to inquire about the status of Holiday Rambler. Mr. Beckley confirmed that Holiday Rambler did file for bankruptcy about a week earlier. On April 2, 2009, Mr. Dean called Mr. Beckley again, at which point Mr. Beckley told Mr. Dean that he thought Mr. Dean was aware of the bankruptcy and that is why he got such a good deal on the RV. In a separate phone call that same day, Mr. Beckley informed Mr. Dean that he had no duty to disclose the bankruptcy, but allegedly agreed to accept return of the RV and to refund the Deans their money. In anticipation of returning the RV, the Deans refrained from using the

RV and paid to have the RV winterized and properly stored. At this time, Endless Summer has neither accepted the return of the RV nor refunded the Deans their money.

On February 4, 2010, the Deans commenced this civil action against Thom Beckley, Inc. and Mr. Beckley. On March 13, 2010, the Deans filed an amended complaint. On May 27, 2010, the defendants filed a motion to dismiss the amended complaint. The Deans have opposed the motion.

## **ANALYSIS**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). "Even though the requirements for pleading a proper complaint are substantially aimed at assuring that the defendant be given adequate notice of the nature of a claim being made against him, they also provide criteria for defining issues for trial and for early disposition of inappropriate complaints." *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and alterations omitted). Thus, the plaintiff's obligation is to set forth

sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937, 1950 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).

     A.     *Motion to Dismiss All Counts Against Mr. Beckley*

Mr. Beckley has moved to dismiss all counts against him individually on two grounds: (1) the amended complaint fails to state any claim against Mr. Beckley individually, and (2) the amended complaint states no facts to support the piercing of the corporate veil to hold Mr. Beckley liable as a shareholder of Thom Beckley, Inc. Because the Deans do not argue that the corporate veil should be pierced, (*see* Pls.' Opp. to Mot. to Dismiss at 5), the court will address only the first theory of personal liability.

Under Maryland law, "corporate officers or agents are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body." *Tedrow v. Deskin*, 290 A.2d 799, 802 (Md. 1972). To hold an officer personally liable, he must have "personally directed or actively participated or cooperated in the tort committed by the corporation." *Shipley v. Perlberg*, 780 A.2d 396, 401 (Md. App. 2001) (quoting *Fletcher v. Havre De Grace Fireworks Co.*, 177 A.2d 908 (Md. 1962)). In *Tedrow*, the Court of Appeals denied a motion to dismiss because the complaint alleged that the owners had knowledge that the corporation sold the plaintiff a car with an altered odometer. *Tedrow*, 290 A.2d at 803; *see also Metromedia Co. v. WCBM Maryland, Inc.*, 610 A.2d 791, 794 (Md. 1991) (denying a motion to dismiss a claim seeking to hold the chief executive officer

4

personally liable because it was alleged that he participated in the tort committed on behalf of the corporation).

The Deans have pled facts sufficient to allege that Mr. Beckley actively participated in a fraudulent inducement of the sale of the RV to them. First, the Deans allege that Mr. Beckley fraudulently concealed that the RV manufacturer, Holiday Rambler, filed for bankruptcy prior to the closing of the sale. (*See* Pls.' Am. Compl. ¶¶ 12, 19-20). The Deans specifically allege that Mr. Beckley personally conducted a walkthrough of the RV with them on March 13, 2009, the closing date of the sale, and "personally explained to Plaintiffs in detail the nature of the warranties they would be provided by Holiday Rambler" knowing that Holiday Rambler had filed for bankruptcy a week earlier. (*Id.* at ¶ 17, 19). The Deans allege that this failure to provide notice of Holiday Rambler's bankruptcy was a material fact within the "unique possession" of Mr. Beckley and Thom Beckley, Inc., which they knew would have caused the Deans to cancel the sale. (*Id.* at ¶ 41). Accordingly, the defendants' motion to dismiss Count I against Mr. Beckley will be denied.

The plaintiffs have not, however, pled facts sufficient to allege that Mr. Beckley is individually liable for Counts II, III, or IV. Mr. Beckley is not a party to the sales contract or warranty agreement and is therefore not individually liable for the breach of contract claim (Count II). Likewise, the Deans do not state facts sufficient to support individual liability against Mr. Beckley under either the Magnuson-Moss Act Warranty Act (Count III) or the Maryland Consumer Protection Act (Count IV). Thus, the motion to dismiss Counts II, III, and IV against Mr. Beckley individually will be granted.

  B.  *Fraud in the Inducement (Count I)*

The Deans allege that the defendants fraudulently induced them to purchase a 2009 RV and a seven-year extended warranty. Because this claim sounds in fraud, it is subject to the heightened pleading standards of Rule 9(b). *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783-84 (4th Cir. 1999); *Adams v. NVR Homes, Inc.*, 193 F.R.D. 243, 249-50 (D. Md. 2000). Rule 9(b) requires a plaintiff to plead "with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). These "circumstances" include "the time, place, and contents of . . . false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Harrison*, 176 F.3d at 784 (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed Prac. & Proc. § 1297 (2d ed. 1990)). "Mere allegations of 'fraud by hindsight' will not satisfy the requirements under Rule 9(b)." *Id.* (quoting *Hillson Partners Ltd. Partnership v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994)). Fraud allegations that fail to comply with Rule 9(b) warrant dismissal under Rule 12(b)(6).

The Deans have pled with sufficient particularity the date, place, and contents of the false representations and the identity of the persons making each representation. (*See* Pls.' Am. Compl. ¶ 40). First, they allege that on February 6, 7, and 9, 2009, Paul Chamberlain, an employee of the Endless Summer RV dealership owned by Thom Beckley, Inc., "falsely represented to Plaintiffs that Holiday Rambler was a solid company; that Holiday Rambler was operating as usual . . . that the Motor Coach the Plaintiffs were purchasing would be in brand new and excellent condition; and that any mechanical and structural defects with the Motor Coach were guaranteed to be covered by warranty." (*Id.*) The Deans allege that Mr. Chamberlain made these representations despite knowing that "Holiday Rambler might cease operations and/or file for bankruptcy, and that the warranty being provided to the Plaintiffs was

6

likely worthless." (*Id.*) Second, the plaintiffs allege that Mr. Dean engaged in over one dozen phone calls between February 10 and March 13, 2009, during which Mr. Chamberlain and defendant Mr. Beckley fraudulently concealed that Holiday Rambler filed for bankruptcy on March 5, 2009, making the plaintiffs' warranty potentially worthless. (*Id.*) Third, the plaintiffs allege that on March 13, 2009, Mr. Beckley "personally explained in detail the nature of the warranties [Plaintiffs] would be provided by Holiday Rambler" and "made representations to the Plaintiffs regarding what potential defects in the Motor Coach would be covered by the warranty" despite knowing that Holiday Rambler was bankrupt. (*Id.* at ¶ 17-19). Fourth, the plaintiffs allege that Thom Beckley, Inc., employee Bill Woodcock sold them an optional and additional seven year extended warranty on the RV while fraudulently concealing that the manufacturer of the RV was in bankruptcy. (*Id.* at ¶ 22). Fifth, the Deans allege that on April 2, 2009, Mr. Beckley misrepresented to them that the company would take back the RV and refund their money. (*Id.* at ¶ 31). Accordingly, the Deans have pled with sufficient particularity a claim for common law fraud.

Whether the Deans have stated a prima facie claim for fraud is a different question. To state a prima facie claim of fraud in Maryland, a plaintiff must demonstrate that: (1) a representation made by a party was false; (2) its falsity was known to that party or the misrepresentation was made with reckless indifference to truth; (3) the misrepresentation was made for the purpose of defrauding the plaintiff; (4) the plaintiff relied upon the misrepresentation and had the right to rely upon it with full belief of its truth; and (5) that the plaintiff suffered damage directly resulting from the misrepresentation. *See Suburban Properties Mgmt. v. Johnson,* 204 A.2d 326, 329 (Md. 1964).

7

The plaintiffs allege that the defendants made false representations in three ways. First, the plaintiffs allege that the defendants made affirmative false representations regarding the quality of the RV itself. The Deans specifically allege that on February 6, 7, and 9, 2009, Endless Summer RV employee Paul Chamberlain "falsely represented to the Plaintiffs that . . . $320,000 was an excellent deal for a 2009 Holiday Rambler Motor Coach; [and] that the Motor Coach the Plaintiffs were purchasing would be in brand new and excellent condition." (Pls.' Am. Compl. ¶ 40). The plaintiffs also allege that on March 13, 2009, Mr. Beckley "falsely described the high quality of the Motor Coach that Plaintiffs purchased." (*Id.*). These statements, however, amount to nothing more than mere "puffery."

It is established law in Maryland that to constitute a false representation, "a statement must be a misrepresentation of material fact. It cannot be an 'estimate' or 'opinion' or 'puffing.'" *Parker v. Columbia Bank*, 604 A.2d 521, 528 (Md. Ct. Spec. App. 1992); *see also*, *Miller v. Premier Corp.*, 608 F.2d 973, 981 (4th Cir. 1979) ("[A] misrepresentation generally must relate to an existing or pre-existing fact; an unspecific and false statement of opinion such as occurs in puffing generally cannot constitute fraud.") (internal citations omitted). Here, all representations that "the Motor Coach was an exceptionally good value" or that "a good company stood behind the Motor Coach", (*see* Pls.' Am. Compl. ¶ 36), are broad and unspecific statements of opinion that amount to nothing more than puffery. *See, e.g.*, *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 512 (Md. Ct. Spec. App. 1999) (holding that a car dealer was not liable for fraudulent inducement based on his statement that the car he sold was "the most outstanding value" on the lot because the statement "amounted to indefinite generality" and "were obvious examples of the kind of 'puffing' and 'sales talk' language that many people have

8

come to expect from car dealers.).  Thus, the Deans cannot rely on these general statements of opinion regarding the value and quality of the RV or the quality of Holiday Rambler to establish that the defendants made a false representation.

Second, the Deans allege that Mr. Beckley falsely represented that he would accept return of the RV and refund their money.  (*Id.* at ¶ 31, 40).  Generally, "fraud cannot be predicated upon statements which are promissory in their nature, and therefore an action for deceit will not lie for the unfulfillment of promises." *Appel v. Hupfield*, 84 A.2d 94, 96 (Md. 1951).  Mr. Beckley's alleged statements on April 2, 2009, were statements of a promissory nature.  He represented that he would take the RV back, but would need a few days to get the cash together.  (*See* Pls.' Am. Compl. ¶ 31).  Even assuming that Mr. Beckley made this false representation as alleged, because it was made almost three weeks after the closing date and 51 days after the contract was signed, this statement cannot support the plaintiffs' claim that they were fraudulently induced to enter into the contract.  Thus, the Deans do not have an action for fraud based on Mr. Beckley's subsequent failure to accept return of the RV or to return their money.

Finally, the plaintiffs allege that the defendants failed to disclose and fraudulently concealed Holiday Rambler's financial troubles and eventual bankruptcy and the potential worthlessness of their warranty.  They specifically allege that on or about February 6, 7, and 9, 2009, Mr. Chamberlain "falsely represented to Plaintiffs that Holiday Rambler was a solid company; that Holiday Rambler was operating as usual . . . and that any mechanical and structural defects with the Motor Coach were guaranteed to be covered by warranty" and "knew that Holiday Rambler was in serious financial jeopardy and that Holiday Rambler might cease

9

operations and/or file for bankruptcy, and that the warranty being provided to the Plaintiffs was likely worthless, yet . . . deliberately omitted to disclose these material facts." (Pls.' Am. Compl. ¶ 40). Likewise, the plaintiffs allege that on March 13, 2009, Mr. Beckley and other employees of Endless Summer RV "fully described the warranty protection covering the Motor Coach, knowing full well that Holiday Rambler was bankrupt and/or going out of business, and that the warranty being sold to Plaintiffs was potentially worthless." (*Id.*). The Deans further allege that on March 13, 2009, employee Bill Woodcock "represented to Plaintiffs that they should purchase an extended warranty, despite his knowledge that the warranty was potentially worthless." (*Id.*). On this theory, the plaintiffs have pled sufficient facts to suggest that the defendants fraudulently concealed and failed to disclose material facts.

Generally, the failure to disclose does not amount to a false representation unless there is a separate duty to disclose. *Polson v. Martin*, 180 A.2d 295, 298 (Md. 1962); *see also Estate of White ex rel. White v. R.J. Reynolds Tobacco Co.*, 109 F.Supp.2d 424, 428 (D. Md. 2000) (concealment may be treated as fraudulent misrepresentation in Maryland if "there exists a separate duty of disclosure to plaintiff by defendant") (quoting *Finch v. Hughes Aircraft Co.*, 469 A.2d 867, 888 (Md. Ct. Spec. App. 1984)). Because all dealings between the parties were at arm's-length, there was no general duty to disclose here. *See Polson*, 180 A.2d at 298. Just because the defendants had no general duty to disclose, however, does not necessarily mean that the Deans cannot hold the defendants liable for their failure to disclose the manufacturer's bankruptcy. *See Lubore v. RPM Assoc., Inc.*, 674 A.2d 547, 556 (Md. Ct. Spec. App. 1996) (where there is no duty to disclose, "[o]ne who conceals facts that materially qualify affirmative representations may be liable for fraud."). Even in transactions conducted at arm's-length, "a

10

duty [to disclose] may arise (1) if the fact is material and the one concealing has superior knowledge and knows the other is acting upon the assumption that the fact does not exist; or (2) if one party takes actions which divert the other party from making prudent investigations." *Bank of Montreal v. Signet Bank*, 193 F.3d 818, 829 (4th Cir. 1999); *see also Remington Rand Corp. v Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995) ("a disclosure duty ripens only when it becomes apparent to the non-disclosing party that another party is operating under a mistaken perception of a material fact").

The plaintiffs allege that because of the specific inquiries they made regarding the coverage of Holiday Rambler's warranties on March 13, 2009, the defendants knew that the plaintiffs were operating on the assumption that the manufacturer would be able to honor its warranties. (*See* Pls.' Am. Compl. ¶19, 22, 34, 43). Thus, Holiday Rambler's bankruptcy qualified affirmative representations the defendants made previously to the Deans regarding the potential scope of the warranty coverage. The defendants knew that disclosing Holiday Rambler's bankruptcy would have caused the Deans to cancel the sale and nevertheless failed to disclose the bankruptcy. (*Id.* at ¶ 41). Accordingly, the plaintiffs have successfully alleged that the defendants had a duty to disclose and that failure to do so amounted to a fraudulent inducement.

The defendants argue that they had no duty to disclose Holiday Rambler's bankruptcy because the information was public. (*See* Defs.' Mot. to Dismiss at 10-12). They argue that once the manufacturer filed for bankruptcy on March 5, 2009, the information was a matter of public record and was no longer information held only by the defendants. The defendants therefore had no duty to disclose the bankruptcy to the Deans. (*See id.* at 11-12) (citing *Perona*

11

*v. Volkswagen of America, Inc.*, 684 N.E.2d 859, 867 (Ill. App. Ct. 1997) (holding that an action under the state's Consumer Fraud Act for concealment of a material fact could not be maintained by plaintiffs who purchased a car with acceleration issues because the company had issued numerous press releases regarding the problem)). Even if the defendants are correct that the manufacturer's bankruptcy filing absolved them of their duty to inform the plaintiffs of the bankruptcy, the Deans entered into the sales contract for the RV on February 9, 2009—almost one month prior to the date the manufacturer filed for bankruptcy. At the time the manufacturer did file for bankruptcy, on March 5, 2009, the defendants were aware that the plaintiffs were operating under the assumption that Holiday Rambler was currently in business and that the warranties they had purchased would be honored. The Deans' questions regarding the coverage of the warranties on March 13, 2009, and their subsequent purchase of an additional 7-year warranty should have put the defendants on notice that the Deans continued to be under the mistaken assumption that Holiday Rambler was a financially stable company that would honor its warranty. At that time, the defendants had a duty to disclose Holiday Rambler's bankruptcy to the Deans even if it was technically on the public record. The Deans had no reason to research court dockets regarding the bankruptcy of a company from which they had already purchased an RV. And even if they had undertaken the task, it is likely they would have found no information, because Holiday Rambler filed for bankruptcy under the name of "Monaco Coach Corporation." Accordingly, the defendants' claim that they had no duty to disclose Holiday Rambler's bankruptcy because it was public information is rejected. The defendants' motion to dismiss Count I will be granted in part and denied in part.

    C.    *Breach of Contract (Count II)*

The Deans have successfully stated a claim for breach of contract on the grounds that Thom Beckley, Inc., has refused to repair defects covered under the sales contract and warranty agreement. (*See* Pls.' Am. Compl. ¶¶ 47-49). The plaintiffs allege, and the defendant does not dispute, that as part of the sales price for the RV, the Deans received the Holiday Rambler Motorhome Limited Warranty agreement ("Warranty"). (*See* Pls.' Am. Compl. ¶ 21). The Warranty explicitly covers "defects in the manufacture of [the] motorhome and defects in materials used to manufacture [the] motorhome" and obligates the defendant to "repair and/or replace, at its option, any covered defect" upon notice of the defect. (*Id.* at Ex. B). According to the plaintiffs' amended complaint, soon after they received the Motor Coach, they found that "numerous problems existed that required maintenance and repair." (*Id.* at ¶ 24). The Deans allege that they informed Thom Beckley, Inc., of no less than sixteen (16) individual defects with the RV covered by the Warranty and that Thom Beckley, Inc., has failed to take any action either to repair the defects or replace broken parts. (*Id.* at ¶ 25-26, 48).

Thom Beckley, Inc., argues that it is not obligated to repair these defects and is therefore not liable for breach of contract because "[m]ost of the defects Plaintiffs allege are not even arguably covered" by the Warranty. (Defs.' Mot. to Dismiss Am. Compl. at 10, n.2). While the defendant may be correct that it is not obligated to repair or replace some of the defects identified by the Deans, the Warranty arguably covers the majority of the defects alleged in the amended complaint. Thus, the Deans have successfully stated a claim for breach of contract with respect to the Warranty agreement.

The Deans also contend that "the parties entered into a contract that obligated the Defendants to provide Plaintiffs with an RV that was supposed to be in new and excellent

condition . . . and to accept return of the RV and refund Plaintiffs' money after agreeing to do so." (Pls.' Opp'n to Mot. to Dismiss at 10 (citing Pls.' Am. Compl. ¶¶ 36, 40, 47, Exs. A-C)). To support this claim, the Deans allege that Thom Beckley, Inc., and its agents made oral representations that the RV was of "exceptionally good value" and that Thom Beckley, Inc., would accept return of the RV and refund their money. (*See* Pls.' Am. Compl. ¶¶ 36, 40). Throughout the Amended Complaint, however, the plaintiffs refer to the defendant's oral statements as fraudulent misrepresentations intended to unlawfully induce the plaintiffs' into purchasing the RV. (*See id.* at ¶ 43). Nowhere do the Deans allege that these representations were terms of the sales contract or warranty agreement that created a contractual obligation on the part of Thom Beckley, Inc. Thus, the plaintiffs have failed to state a claim against the defendant for breach of contract for failing to supply an RV in "new and excellent condition" or for failing to accept return of the RV and refund Plaintiffs' money. The defendant's motion to dismiss Count II will be granted in part and denied in part.

        D.    *Violation of the Magnuson-Moss Warranty Act (Count III) & Violation of the Maryland Consumer Protection Act (Count IV)*

Because the Magnuson-Moss Warranty Act "supplements State law with regard to its limited and implied warranty provisions," *Crickenberger v. Hyundai Motor America*, 944 A.2d 1136, 1141 (Md. 2008), the court will address the defendant's motion to dismiss Counts III and IV as one. Magnuson-Moss provides federal remedies for a consumer damaged by a supplier's failure to comply with written or implied warranties, 15 U.S.C. § 2310(d)(1), but requires a plaintiff to first establish a breach of limited or implied warranty under Maryland state law. *See Crickenberger*, 944 A.2d at 1145 (Md. 2008). Because the plaintiffs successfully state a claim against Thom Beckley, Inc., for violation of a number of provisions under the Maryland

14

Consumer Protection Act ("MCPA"), they derivatively state a claim against the defendant for violation of Magnuson-Moss.

The plaintiffs allege that the defendant violated a number of provisions of the MCPA prohibiting unfair or deceptive trade practices. (*See* Pls.' Am. Compl. ¶ 59). They allege that Thom Beckley, Inc., specifically has violated §§ 13-301(1); (2)(i); 2(ii); 2(iv); (3); (6); (8); (9)(i); and (9)(iii) of the MCPA. (*See id.*). All of these provisions identified by the Deans involve the use of fraudulent statements, the failure to state material facts, fraudulent misrepresentations, and knowing concealment of material facts in connection with the sale of a good. As discussed above, the plaintiffs have sufficiently pled facts to establish the use of fraud in connection with the sale of the RV.

In addition to the provisions specifically identified by the plaintiffs, the MCPA also proscribes the failure of a supplier to honor a warranty. *See* Md. Code Ann., Com. Law § 13-301(14)(xi) (including among unfair or deceptive trade practices the violation of the Automotive Warranty Enforcement Act). Although the Deans do not specifically point to this provision in the amended complaint, they do state facts sufficient to support a claim against Thom Beckley, Inc., for violation of this portion of the MCPA for failing to repair the defects in the RV, as they are allegedly obligated to under the warranty agreement. Accordingly, the Deans have successfully stated a claim against Thom Beckley, Inc., for violation of the MCPA for its statements, conduct, and failure to honor the warranty provisions. They also have successfully stated a claim for violation of the Magnuson-Moss Warranty Act. The defendant's motion to dismiss Counts III and IV will be denied.

A separate Order follows.

October 1, 2010                          /s/
Date                                   Catherine C. Blake
                                            United States District Judge